Michael R. Lozeau (State Bar No. 142893)
Douglas J. Chermak (State Bar No. 233382)
LOZEAU DRURY LLP
410 12th Street, Suite 250
Oakland, CA 94607
Tel: (510) 836-4200
Fax: (510) 836-4205 (fax)
E-mail: michael@lozeaudrury.com
        doug@lozeaudrury.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

Scott W. Gordon (State Bar No. 99716)
LAW OFFICES OF SCOTT W. GORDON
1990 North California Blvd., Suite 620
Walnut Creek, CA 94596
Tel: (925) 295-3133
Fax: (925) 295-3132
E-mail: swgordon@tbsglaw.com

Attorney for Defendant
REPUBLIC SERVICES, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation, <br><br>        Plaintiff, <br><br>     vs. <br><br> REPUBLIC SERVICES, INC., a corporation. <br><br>       Defendant. | Case No. 4:09-cv-01757-PJH <br><br> **STIPULATION AND [PROPOSED] ORDER TO AMEND DISMISSAL ORDER** |

WHEREAS, on December 11, 2008, Plaintiffs California Sportfishing Protection Alliance

("CSPA") provided Defendant Republic Services, Inc. ("RSI") with a Notice of Violations and

Intent to File Suit ("Notice") under Clean Water Act § 505, 33 U.S.C. § 1365;

WHEREAS, on April 22, 2009, CSPA filed its Complaint against RSI in this Court,

*California Sportfishing Protection Alliance v. Republic Services, Inc.,* Case No. 4:09-cv-01757-PJH.

Said Complaint incorporates by reference all of the allegations contained in CSPA's Notice;

WHEREAS, CSPA and RSI, through their authorized representatives and without either adjudication of CSPA's claims or admission by RSI of any alleged violation or other wrongdoing, chose to resolve in full by way of settlement the allegations of CSPA as set forth in the Notice and Complaint, thereby avoiding the costs and uncertainties of further litigation. A copy of the Settlement Agreement and Mutual Release of Claims ("Settlement Agreement"), without the attached exhibits, entered into by and between CSPA and RSI is attached hereto as Exhibit 1.

WHEREAS, on March 3, 2010, the Court entered an order to dismiss the claims against RSI and to retain jurisdiction over the parties through December 14, 2012, for the sole purpose of resolving any disputes between the parties with respect to enforcement of any provisions of the Settlement Agreement;

WHEREAS, on December 10, 2012, the parties signed an Amendment to the Settlement Agreement ("Amendment") to extend the life of the Settlement Agreement to December 9, 2013, with respect to one of the storm water discharge locations at one of RSI's industrial facilities that were the subject of the Complaint such that RSI will evaluate the efficacy and feasibility of implementing additional pollution controls at that location, as described in the Amendment attached hereto as Exhibit 2;

WHEREAS, on December 11, 2012, the parties submitted the Amendment via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice for a 45-day review period set forth at 40 C.F.R. § 135.5;

WHEREAS, the parties wish to apprise the Court of the Amendment to the Settlement Agreement;

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the parties that the Court shall continue to retain jurisdiction over the parties through December 9, 2013 for the sole purpose of resolving any disputes between them with respect to enforcement of any provisions of the Settlement Agreement and the Amendment thereto.

Dated: December 11, 2012

/s/ *Douglas J. Chermak*
DOUGLAS J. CHERMAK
Attorneys for Plaintiffs

Dated: December 11, 2012

/s/ *Scott W. Gordon*
(as authorized on 12/11/12)
SCOTT W. GORDON
Attorney for Defendants

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated:  _____, 2012

_____
Judge Phyllis J. Hamilton
United States District Judge

# EXHIBIT 1

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE OF CLAIMS

This Settlement Agreement and Mutual Release of Claims ("AGREEMENT") is entered into between the California Sportfishing Protection Alliance ("CSPA") and Republic Services, Inc. ("RSI") (collectively, the "SETTLING PARTIES") with respect to the following facts and objectives:

## RECITALS

**WHEREAS**, CSPA is a 501(c)(3) non-profit, public benefit corporation organized under the laws of the State of California, dedicated to the protection, enhancement, and restoration of the San Pablo Bay, the San Francisco Bay, and other California waters. Bill Jennings is the Chairperson of CSPA and a member of CSPA;

**WHEREAS**, RSI is a corporation organized under the laws of the State of Delaware that has subsidiary companies which own and operate two industrial facilities located at 1 Parr Blvd in Richmond, California. One facility is a transportation and maintenance yard and office complex facility owned and operated by Richmond Sanitary Service, Inc. ("RSS") and the other facility is a closed Class II Sanitary landfill owned by West County Landfill, Inc. ("WCL") and previously operated by West Contra Costa Sanitary Landfill, Inc. ("WCCSL"). The RSS and WCL facilities are both operated pursuant to State Water Resources Control Board Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereinafter, the "General Permit"). A map of the RSS facility is attached hereto as Exhibit A and incorporated by reference. A map of the WCL facility is attached hereto as Exhibit B and incorporated by reference;

**WHEREAS**, on or about December 12, 2008, CSPA provided RSI with a Notice of Violation and Intent to File Suit ("60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365;

1

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Republic Services, Inc. –
Case No. 4:09-cv-01757-PJH

**WHEREAS**, on April 22, 2009, CSPA filed its Complaint in the United States District Court for the Northern District of California against RSI (*California Sportfishing Protection Alliance v. Republic Services, Inc.,* Case No. 4:09-cv-01757-PJH). A true and correct copy of the Complaint, including the 60-Day Notice Letter, is attached hereto as Exhibit C and incorporated by reference;

**WHEREAS**, RSI denies any and all of CSPA's claims in its 60-Day Notice Letter and Complaint;

**WHEREAS**, CSPA and RSI, through their authorized representatives and without either adjudication of CSPA's claims or admission by RSI of any alleged violation or other wrongdoing, have chosen to resolve in full CSPA's allegations in the 60-Day Notice Letter and Complaint through settlement and avoid the cost and uncertainties of further litigation; and

**WHEREAS**, CSPA and RSI have agreed that it is in their mutual interest to enter into this AGREEMENT setting forth the terms and conditions appropriate to resolving CSPA's allegations set forth in the 60-Day Notice Letter and Complaint.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, CSPA and RSI hereby agree as follows:

## EFFECTIVE DATE

1.      The term "Effective Date," as used in this AGREEMENT, shall mean the last date on which the signature of a party to this AGREEMENT is executed.

## COMMITMENTS OF CSPA

2.      **Stipulation to Dismiss and [Proposed] Order.** Within ten (10) calendar days of the expiration of the Agencies' review period specified in Paragraph 18 below, CSPA shall file a Stipulation to Dismiss and [Proposed] Order thereon pursuant to Federal Rule of Civil Procedure 41(a)(2) with the United States District Court for the Northern District of California ("District Court"), with this AGREEMENT attached and incorporated by reference, specifying that CSPA is dismissing all claims in CSPA's Complaint. Consistent with Paragraphs 24 and 25 herein, the

2

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Republic Services, Inc. –
Case No. 4:09-cv-01757-PJH

Stipulation to Dismiss and [Proposed] Order shall state that the District Court will maintain jurisdiction through December 14, 2012 for purposes of resolving any disputes between the SETTLING PARTIES with respect to any provision of this AGREEMENT. If the District Court chooses not to enter the Order, this AGREEMENT shall be null and void.

## COMMITMENTS OF RSI

3. **Compliance with General Permit.** RSI agrees to operate the RSS and WCL facilities in compliance with the applicable requirements of the General Permit and Clean Water Act.

4. **Implemented Storm Water Controls**. RSI shall maintain in good working order all storm water collection and treatment systems at the RSS and WCL facilities currently installed or to be installed pursuant to this AGREEMENT, including but not limited to, existing housekeeping measures.

5. **Additional Best Management Practices.** Within sixty (60) calendar days after the EFFECTIVE DATE, unless otherwise noted, RSI shall implement the following structural best management practices (ōBMPsö) to improve the storm water pollution prevention measures at the drop inlets, outfalls, and other industrial areas at the RSS and WCL facilities:

### RSS Facility

    a.    Within ten (10) calendar days of the EFFECTIVE DATE, at storm water discharge location RSS-4, RSI shall construct a ladder over the concrete wall such that storm water discharge samples will be collected at the final location where storm water exits this portion of the RSS facility. This point is subsequent to the commingling of the storm water that is collected at RSS-3 and then piped underground to mix with the storm water that collects at RSS-4.

    b.    RSI shall clean out, hydro-jet, or power wash the culvert just prior to the RSS-4 outfall in order to remove all accumulated sediment from the

culvert. During this process, RSI shall employ measures and safeguards to prevent water from being discharged at RSS-4.

c.    To protect the drop inlets leading to the RSS-4 outfall and help filter out any potential pollutants, RSI shall implement a series of straw waddles or straw bales surrounding the drop inlets that flow toward the RSS-4 outfall. Such waddles or bales shall be trenched and keyed into the ground or otherwise placed and secured to ensure that there are no gaps between or under them.

d.    By October 1, 2010, RSI shall grade, seed or vegetate exposed soil with native plants in the area adjacent to the wall in the southwestern portion of the RSS facility where storm water flows to the RSS-4 outfall. This increased vegetation shall be used to reduce the concentration of pollutants in storm water discharges at the RSS-4 outfall.

e.    Within ten (10) calendar days of the EFFECTIVE DATE, RSI shall complete a concrete berm around the majority of the parking lot. The location of this berm is marked on Exhibit A.

f.    RSI shall construct and install a concrete inlet box at the RSS-1 outfall to facilitate sampling prior to discharge into the drainage ditch off the property. The inlet box will consist of a closed box with an outlet spillway or pipe, so that storm water is conveyed discretely into the drainage ditch and cannot freely flow off-site into the drainage ditch. RSI shall sample storm water discharges at this outlet. The box shall be sized appropriately to handle the storm water drainage from this portion of the RSS facility.

g.    Prior to discharges at the RSS-2 outfall, RSI shall construct and install a concrete barrier, bridging the channel like a dam, with a discharge pipe or small spillway to control the storm water flows at RSS-2 and facilitate

storm water sampling. Storm water sampling shall take place on site just before the storm water discharges exit the property at the fence line.

h.  RSI shall construct and install a concrete berm to channel and contain the truck wash water and ensure that it flows to the oil/water separator and does not commingle with storm water discharges at the RSS-2 outfall.

## WCL Facility

i.  By January 31, 2010, RSI shall clean out the brick-lined channel that flows to the WCL-8 outfall.

j.  By October 1, 2010, RSI shall revise and reconstruct the entrance area of the WCL facility to pave the currently unpaved areas and to create a sedimentation basin west of the roadway. The sedimentation basin shall be sized appropriately to handle storm water drainage from this portion of the WCL facility and allow sufficient holding time to permit sediments to settle before being discharged. Overflows from the basin shall flow to the brick-lined channel and then exit the facility at the WCL-8 outfall. Storm water sampling shall continue at the present WCL-8 outfall location.

k.  RSI shall construct and install an inlet box around the pipe that leads to the WCL-9 outfall and valve the pipe shut such that storm water will not freely discharge off-site. On either side of the inlet box, RSI shall create a large retention holding capability by placing straw bales and waddles along the road edge on either side of the pipe. The waddles will extend for approximately sixty (60) feet along the road's edge on either side of the pipe. To increase the capacity of this drainage swale retention area to hold storm water flows, RSI shall increase the depth of the shoulder along the wall of the facility surrounding the inlet box. RSI shall install a pump or series of pumps to channel accumulated water from this area to Area A of the facility, marked on Exhibit B. These actions shall eliminate storm water discharges at WCL-9. WCL shall conduct monthly visual

5

observations of this drainage swale retention area during rain events to ensure that no storm water is being discharged at WCL-9. In the event that water must be discharged from WCL-9, RSI shall sample and analyze the storm water discharges at the WCL-9 outfall, in accordance with the parameters set forth in the General Permit and this AGREEMENT, and take steps necessary to cease such discharge.

l.     RSI shall eliminate storm water discharges at the WCL-10 outfall, and route the storm water that accumulates at WCL-10 to the retention area created at the WCL-9 outfall. As described above, this water will then be pumped to Area A. WCL shall conduct monthly visual observations of the WCL-10 outfall during rain events to ensure that no water is being discharged. In the event that water is being discharged, RSI shall sample and analyze the storm water discharges at the WCL-10 outfall and take steps necessary to cease such discharge.

m.     RSI shall install straw waddles along the inside edge of the perimeter road surrounding the Class II waste disposal area. Such waddles shall be trenched and keyed into the group or otherwise placed and secured to ensure that there are no gaps between or under them. RSI shall evaluate whether the trail surrounding the Class II waste disposal area has an inward surface flow gradient.

n.     RSI shall conduct monthly visual observations and sample any and all storm water discharges from the Class II waste disposal area. This includes discharges from both established storm water sampling locations as well as from any observed rills or gullies.

o.     By October 1, 2010, RSI will have completed closure of the Class II waste disposal area and shall subsequently use GPS technology to determine new down drains and storm water discharge locations for the Class II waste disposal area. RSI shall conduct storm water sampling at these new discharge locations as may be required by the Permit. RSI shall revise the

6

SETTLEMENT AGREEMENT: California Sportfishing Protection Alliance v. Republic Services, Inc. ó
Case No. 4:09-cv-01757-PJH

map attached to the Storm Water Pollution Prevention Plan (ӧSWPPPӧ) for the WCL facility accordingly.

6. **Increased Housekeeping Measures.** Within thirty (30) days of the EFFECTIVE DATE, RSI shall institute the following accelerated cleaning schedule at the RSS and WCL facilities as specified:

    a.    RSI shall use a regenerative sweeper to conduct weekly sweeping of the entire RSS facility. RSI shall conduct additional sweeping of the RSS facility as needed prior to any anticipated rain events.

    b.    RSI shall contract with a regenerative sweeper to sweep all paved areas near the entrance area at the WCL facility. Sweeping shall occur on a weekly basis and as needed prior to any anticipated rain events. By October 1, 2010, this sweeping shall cover the entire repaved area near the entrance.

    c.    RSI shall include a narrative description of the sweeping programs in the SWPPP at each facility. A log sheet attached to a clipboard shall be maintained at each facility to document the dates and times that the sweepers are operated. A sample blank log sheet will be included in the each facilityӧs Annual Report and SWPPP.

    d.    RSI will stripe and number the entire paved parking lot where trucks are parked at the RSS facility. This will facilitate regular inspections and observations of oil stains by stall number. RSI shall institute a program where the spills are addressed post-inspection by clean-up in the specific area by stall number. The program will include a discrete daily inspection undertaken by the siteӧs utility personnel to address oil spills and leaks for prompt clean-up.

7. **Monitoring**. At the RSS and WCL facilities, RSI agrees to perform the monitoring described herein during the 2009-2010, 2010-2011, and 2011-2012 rainy seasons.

7

a.      RSI shall sample and analyze storm water discharges at each discharge location from three (3) qualifying storm events that result in discharges consistent with the requirements and protocols set forth in the General Permit.

b.      At the RSS facility, RSI shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease or total organic carbon, specific conductance, nickel, copper, and lead.

c.      At the WCL facility, RSI shall analyze each storm water sample taken in accordance with the General Permit and this Agreement for, at a minimum, total suspended solids, pH, oil and grease or total organic carbon, specific conductance, iron, chemical oxygen demand, zinc, copper, and lead.

d.      RSI shall conduct monthly visual observations of each discharge location for at least one qualifying rain event per month that results in any discharges from the RSS and WCL facilities.  RSI shall maintain a written log describing these observations.

e.      During each of its monthly wet weather storm inspections required by the General Permit, RSI shall document each storm water outfall at the RSS and WCL facilities with photographs.  Copies of the photographs will be attached to the RSS and WCL facilities ø Annual Reports.

f.      All photographs required by this Settlement Agreement shall be in color and electronically formatted.  Each photograph shall be identified by date, the person taking the photograph and the location of the outfall being photographed.  The title of each electronic photograph shall include, at a minimum, the date it was taken, the initials of the person taking the photograph and the location of the photographed area (for example,

"6.13.2009 WCL outfall x"). Any photograph required by this Settlement Agreement shall be provided to CSPA upon request via compact disc(s).

g. All maintenance, repair, and replacement activities relating to each facility's storm water management program shall be recorded and described on appropriate log books or sheets. Such logs shall include, but not be limited to, filter repairs and replacements. Sample log sheets shall be included in the RSS and WCL facilities' SWPPPs. Completed logs for each rainy season shall be included as part of the RSS and WCL facilities' Annual Reports submitted to the San Francisco Bay Regional Water Quality Control Board ("Regional Board").

8. **Monitoring Results.** Results from RSI's sampling and analysis at both the RSS and WCL facilities during the term of this AGREEMENT shall be provided to CSPA within 60 days of receipt of the sampling results by RSI or its counsel.

9. **Amendment of SWPPP.** Within sixty (60) days of the EFFECTIVE DATE of this AGREEMENT, RSI shall amend the RSS and WCL facilities' SWPPPs to incorporate all changes, improvements, sample log forms, and best management practices set forth in or resulting from this AGREEMENT. RSI shall ensure that all maps, tables, and text comply with the requirements of the General Permit. RSI shall ensure that the SWPPPs describe all potential pollutant sources and significant materials stored at each facility, identify the pollution prevention teams, describe all structural and non-structural BMPs, detail the measures to be installed, and discuss why such BMPs will be effective in addressing the pollutant sources at each facility. The SWPPP maps shall include the direction of storm water flows/drainage areas, the areas of potential erosion, and a description of all nearby water bodies. The WCL facility SWPPP shall include a map of the CAMU areas depicting the direction of storm water flows. A copy of the amended SWPPPs shall be provided to CSPA within ten (30) days of completion.

10. **Meet and Confer Regarding Exceedance of Levels of Potential Concern.** If analytical results of storm water samples taken by the during the 2009-2010, 2010-2011, and/or 2011-2012 rainy season indicate that storm water discharges from the RSS and/or WCL facilities exceed the following levels of potential concern – Total Suspended Solids: 100 mg/L; Specific

9

Conductance: 200 μmhos/cm; Oil & Grease: 15 mg/L or Total Organic Carbon: 120 mg/L; pH: 6.0-9.0 s.u.; Zinc: 0.117 mg/L; Nickel: 1.417 mg/L; Iron: 1.0 mg/L; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; and Chemical Oxygen Demand: 120 mg/L – RSI agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering additional BMPs aimed at reducing levels observed in storm water samples.

In furtherance of that objective, RSI shall prepare a written statement ("Memorandum") discussing:

     (1)  Any exceedance or exceedances;

     (2)  An explanation of the possible cause(s) and/or source(s) of any exceedance; and

     (3)  Responsive actions to improve its storm water management practices, including modified or additional feasible BMPs to be considered to further reduce the possibility of future exceedance(s).

Such Memorandum shall be e-mailed and sent via first class mail to CSPA not later than July 15th (or at such date as may be mutually agreed upon) following the conclusion of each rainy season.

11.    Any additional measures set forth in the Memorandum shall be implemented as soon as practicable, but not later than twenty-one (21) days from the due date of the Memorandum, except where 1) structural changes require longer than twenty-one (21) days to complete; 2) weather-related conditions render immediate implementation infeasible; or 3) the SETTLING PARTIES agree in writing to defer implementation of specific measures in order to effectively meet and confer in accordance with Paragraph 12. Within thirty (30) days of implementation, the RSS and WCL facilities' SWPPPs shall be amended to include all additional BMP measures designated in the Memorandum.

12.    Upon receipt of the Memorandum, CSPA may review and comment on any additional measures. If requested by CSPA within twenty-one (21) days of receipt of such Memorandum, CSPA and RSI shall meet and confer and conduct a site inspection within sixty (60) days after the due date of the Memorandum to discuss the contents of the Memorandum and

the adequacy of proposed measures to improve the quality of the RSS and WCL facilities' storm water to levels at or below the Levels of Potential Concern. If within twenty-one (21) days of the parties meeting and conferring, the parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the SETTLING PARTIES may agree to seek a settlement conference with the Magistrate Judge assigned to this action pursuant to Paragraphs 24 and 25 below. If the SETTLING PARTIES fail to reach agreement on additional measures, CSPA may bring a motion before the Magistrate Judge consistent with Paragraphs 24 and 25 below. If CSPA does not request a meet and confer regarding the Memorandum within the twenty-one (21) day comment period provided for in this paragraph, CSPA shall waive any right to object to such Memorandum pursuant to this AGREEMENT.

13.     Any concurrence or failure to object by CSPA with regard to the reasonableness of any additional measures required by this AGREEMENT or implemented by RSI shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the RSS and WCL facilities' storm water into compliance with applicable water quality criteria or benchmark values.

14.     In addition to any site inspections conducted as part of meeting and conferring on additional measures set forth above, RSI shall permit representatives of CSPA to perform one (1) additional site visit to the RSS and WCL facilities per year during normal daylight business hours during the term of this AGREEMENT; provided that CSPA provides RSI via e-mail with at least one week prior written notice.

15.     **Provision of Documents and Reports.**  During the life of this AGREEMENT, RSI shall provide CSPA with a copy of all documents submitted to the Regional Board or the State Water Resources Control Board ("State Board") concerning the RSS and WCL facilities' storm water discharges, including but not limited to all documents and reports submitted to the Regional Board and/or State Board as required by the General Permit. Such documents and reports shall be mailed to CSPA contemporaneously with submission to such agency. RSI also shall provide CSPA a copy of all documents referenced in this agreement, including but not limited to logs, photographs, or analyses, within seven (7) days of a written request (via e-mail or regular mail) by CSPA.

16.     **MITIGATION PAYMENT**.  In recognition of the good faith efforts by RSI to comply with all aspects of the General Permit and the Clean Water Act, and in lieu of payment by RSI of any penalties which have been disputed but could have been assessed in this action if it had been adjudicated adversely to RSI, the SETTLING PARTIES agree that RSI shall pay the sum of one hundred and twenty thousand dollars ($120,000) to the Rose Foundation for Communities and the Environment ("Rose Foundation") for the sole purpose of providing grants to water quality improvement projects in the San Francisco Bay.  The SETTLING PARTIES agree to recommend to the Rose Foundation that up to forty thousand dollars ($40,000) of the mitigation funds be directed to one or more proposals submitted by The Watershed Project, a California non-profit charitable organization whose principal mission is the cleaning and restoration of tributaries to San Francisco Bay, if a suitable grant application is submitted to the Rose Foundation.  RSI shall prepare a letter to be jointly signed by the SETTLING PARTIES recommending such a proposal from The Watershed Project.  Payment shall be provided to the Rose Foundation as follows:  Rose Foundation, 6008 College Avenue, Oakland, CA 94618, Attn: Tim Little.  The Rose Foundation shall provide notice to the SETTLING PARTIES and the U.S. Department of Justice within thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds.

17.     **Fees, Costs, and Expenses**.  As reimbursement for CSPA's investigative, expert and attorneys' fees and costs, RSI shall pay CSPA the sum of fifty-three thousand five hundred dollars ($53,000).  Payment shall be made by RSI within fifteen (15) calendar days of the District Court's entry of the Order dismissing the action described in Paragraph 2 of this AGREEMENT.  Payment by RSI to CSPA shall be made in the form of a single check payable to "Lozeau Drury LLP Attorney-Client Trust Account," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CSPA that have or could have been claimed in connection with CSPA's claims, up to and including the EFFECTIVE DATE of this AGREEMENT.

**Compliance Oversight Costs**:  As reimbursement for CSPA's future costs that will be incurred in order for CSPA to monitor RSI's compliance with this AGREEMENT and to effectively meet and confer and evaluate monitoring results for the RSS and WCL facilities, RSI agrees to reimburse CSPA for costs incurred in overseeing the implementation of this

AGREEMENT based on the payment schedule below. Costs reimbursable pursuant to this paragraph may include, but are not limited to, costs by CSPA or its counsel to conduct site inspections, review of water quality sampling reports, review of annual reports, discussion with representatives of RSI, concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions and mediation, and water quality sampling. Up to three annual payments (one addressing monitoring associated with the 2009-2010 rainy season, one addressing monitoring associated with the 2010-2011 rainy season, and one addressing monitoring associated with the 2011-2012 rainy season) shall be made payable to "Lozeau-Drury Attorney-Client Trust Account" within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months. CSPA shall make a good faith effort to minimize its oversight costs.

The payment schedule shall be as follows:

| | |
|---|---|
| 2009-2010: | $9,000 maximum |
| 2010-2011: | $7,000 maximum |
| 2011-2012: | $6,000 maximum |

18. **Review by Federal Agencies.** CSPA shall submit this AGREEMENT to the U.S. EPA and the U.S. Department of Justice (hereinafter, the "Agencies") via certified mail, return receipt requested, within five (5) days after the Effective Date of this AGREEMENT for review consistent with 40 C.F.R. § 135.5. The Agencies' review period expires forty-five (45) days after receipt of the AGREEMENT by both Agencies, as evidenced by the return receipts, copies of which shall be provided to RSI upon receipt by CSPA. In the event that the Agencies comment negatively on the provisions of this AGREEMENT, CSPA and RSI agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies. If CSPA and RSI are unable to resolve any issue(s) raised by the Agencies in their comments, CSPA and RSI agree to expeditiously seek a settlement conference with the mediator or the Court to resolve the issue(s).

<u>NO ADMISSION OR FINDING</u>

19. Neither this AGREEMENT nor any payment pursuant to the AGREEMENT shall constitute evidence or be construed as a finding, adjudication, or acknowledgment of any fact,

13

law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation. However, this AGREEMENT and/or any payment pursuant to the AGREEMENT may constitute evidence in actions seeking compliance with this AGREEMENT.

## MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

20.     In consideration of the above, and except as otherwise provided by this AGREEMENT, the SETTLING PARTIES hereby forever and fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all claims and demands of any kind, nature, or description whatsoever, and from any and all liabilities, damages, injuries, actions or causes of action, either at law or in equity, which the SETTLING PARTIES have against each other arising from CSPA's allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

21.     The SETTLING PARTIES acknowledge that they are familiar with section 1542 of the California Civil Code, which provides:

A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The SETTLING PARTIES hereby waive and relinquish any rights or benefits they may have under California Civil Code section 1542 with respect to any other claims against each other arising from, or related to, the allegations and claims as set forth in the 60-Day Notice Letter and Complaint up to and including the Termination Date of this AGREEMENT.

22.     For the period beginning on the Effective Date and ending on December 14, 2012, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against RSI, RSS, WCL, WCCSL or their affiliates seeking relief for alleged violations of the Clean Water Act or violations of the General Permit at the RSS and WCL facilities. CSPA further agrees that, beginning on the Effective Date and

ending on December 14, 2012, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against the RSS and WCL facilities that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the RSS and WCL facilities' compliance with the Clean Water Act or the General Permit.

## TERMINATION DATE OF AGREEMENT

23.     This AGREEMENT shall terminate on December 14, 2012.

## DISPUTE RESOLUTION PROCEDURES

24.     Except as specifically noted herein, any disputes with respect to any of the provisions of this AGREEMENT shall be resolved through the following procedure. The SETTLING PARTIES agree to first meet and confer to resolve any dispute arising under this AGREEMENT. In the event that such disputes cannot be resolved through this meet and confer process, the SETTLING PARTIES agree to request a settlement meeting before the Magistrate Judge assigned to this action. In the event that the SETTLING PARTIES cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the SETTLING PARTIES agree to submit the dispute via motion to the Magistrate Judge.

25.     In resolving any dispute arising from this AGREEMENT, the Judge shall have discretion to award attorneys' fees and costs to either party. The relevant provisions of the then-applicable Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Magistrate Judge. The Magistrate Judge shall award relief limited to compliance orders and awards of attorneys' fees and costs, subject to proof. The SETTLING PARTIES agree to file any waivers necessary for the Magistrate Judge to preside over any settlement conference and motion practice.

## BREACH OF SETTLEMENT AGREEMENT

26.     **Impossibility of Performance.** Where implementation of the actions set forth in this AGREEMENT, within the deadlines set forth in those paragraphs, becomes impossible,

despite the timely good faith efforts of the SETTLING PARTIES, the party who is unable to comply shall notify the other in writing within seven (7) days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The SETTLING PARTIES agree to meet and confer in good faith concerning the non-performance and, where the SETTLING PARTIES concur that the non-performance was or is impossible, despite the timely good faith efforts of one of the SETTLING PARTIES, new performance deadlines shall be established. In the event that the SETTLING PARTIES cannot timely agree upon the terms of such a stipulation, either of the SETTLING PARTIES shall have the right to invoke the dispute resolution procedure described herein.

## **GENERAL PROVISIONS**

27. **Construction.** The language in all parts of this AGREEMENT shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

28. **Choice of Law.** This AGREEMENT shall be governed by the laws of the United States, and where applicable, the laws of the State of California.

29. **Severability.** In the event that any provision, section, or sentence of this AGREEMENT is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

30. **Correspondence.** All notices required herein or any other correspondence pertaining to this AGREEMENT shall be sent by regular, certified, or overnight mail as follows:

If to CSPA:

Bill Jennings, Chairman
California Sportfishing Protection Alliance
3536 Rainier Road
Stockton, CA 95204
Tel: (209) 464-5067
deltakeep@aol.com

And to:

Michael R. Lozeau
Douglas J. Chermak
Lozeau Drury LLP
1516 Oak Street, Suite 216
Alameda, CA 94501
Tel:  (510) 749-9102
michael@lozeaudrury.com
doug@lozeaudrury.com

If to RSI:

For WCCSL:
Peter Nuti, General Manager
West County Landfill, Inc.
3260 Blume Drive, Suite 200
Richmond, California 94806

For RSS:
Shawn Moberg, General Manager
Richmond Sanitary Service, Inc.
3260 Blume Drive, Suite 100
Richmond, California 94806

And to:

Scott W. Gordon
Law Offices of Scott W. Gordon
1990 N. California Blvd., Suite 940
Walnut Creek, CA  94596
swgordon@sbcglobal.net

Notifications of communications shall be deemed submitted on the date that they are e-mailed, postmarked and sent by first-class mail or deposited with an overnight mail/delivery service.  Any change of address or addresses shall be communicated in the manner described above for giving notices.

31.     **Counterparts.**  This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

32. **Assignment.** Subject only to the express restrictions contained in this AGREEMENT, all of the rights, duties and obligations contained in this AGREEMENT shall inure to the benefit of and be binding upon the SETTLING PARTIES, and their successors and assigns.

33. **Modification of the Agreement:** This AGREEMENT, and any provisions herein, may not be changed, waived, discharged or terminated unless by a written instrument, signed by the SETTLING PARTIES.

34. **Full Settlement.** This AGREEMENT constitutes a full and final settlement of this matter. It is expressly understood and agreed that the AGREEMENT has been freely and voluntarily entered into by the SETTLING PARTIES with and upon advice of counsel.

35. **Integration Clause.** This is an integrated AGREEMENT. This AGREEMENT is intended to be a full and complete statement of the terms of the agreement between the SETTLING PARTIES and expressly supersedes any and all prior oral or written agreements covenants, representations and warranties (express or implied) concerning the subject matter of this AGREEMENT.

36. **Authority.** The undersigned representatives for CSPA and RSI each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this AGREEMENT.

The SETTLING PARTIES hereby enter into this AGREEMENT.

Date: __28 Dec__, 2009

REPUBLIC SERVICES, INC.

By: __Tim M. Benter__
Title: __Vice President__

Date: __6 De__, 2009

CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

18

**APPROVED AS TO FORM:**

Date: 12/28 , 2009

For DEFENDANT

LAW OFFICES OF SCOTT W. GORDON

By:  Scott W. Gordon, Esq.

Date: December 8, 2009

For PLAINTIFF

LOZEAU DRURY LLP

By:  Michael R. Lozeau, Esq.

EXHIBIT 2

# AMENDMENT TO SETTLEMENT AGREEMENT
## AND MUTUAL RELEASE OF CLAIMS

This Amendment to Settlement Agreement and Mutual Release of Claims ("Amendment") is entered into between California Sportfishing Protection Alliance and Republic Services, Inc. ("RSI"), (collectively, the "Parties") with respect to the following facts and objectives:

**WHEREAS**, the Parties are party to a Settlement Agreement and Mutual Release of Claims ("Agreement");

**WHEREAS**, the Parties desire to amend the Agreement as set forth herein;

**WHEREAS**, by this amendment the Parties are agreeing to extend the term of the Agreement solely to address discharges from outfall RSS-1 at the Richmond Sanitary Service, Inc. facility; and

**WHEREAS**, except where explicitly stated herein, all terms and conditions to the Agreement remain in effect and are incorporated herein;

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, CSPA and RSI, by and through their authorized representatives, agree as follows:

1.     Extension of Agreement: The termination date of the agreement set forth in Paragraph 23 shall be changed from December 14, 2012, to December 9, 2013.  Paragraph 23 of the Agreement is hereby amended and restated in its entirety as follows:

"This AGREEMENT shall terminate on December 9, 2013."

Paragraph 22 is accordingly hereby amended and restated in its entirety as follows:

"For the period beginning on the Effective Date and ending on December 9, 2013, CSPA agrees that neither CSPA, its officers, executive staff, members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or members of its governing board, will file any lawsuit against RSI, RSS, WCL, WCCSL or their affiliates seeking relief for alleged violations of the Clean Water Act or violations of the General Permit at the RSS and WCL facilities.  CSPA further agrees that, beginning on the Effective Date and ending on December 9, 2013, CSPA will not support other lawsuits, by providing financial assistance, personnel time or other affirmative actions, against the RSS and WCL facilities that may be proposed by other groups or individuals who would rely upon the citizen suit provision of the Clean Water Act to challenge the RSS and WCL facilities' compliance with the Clean Water Act or the General Permit."

2.     Additional Sampling and Monitoring: The Parties agree to include additional sampling and monitoring only for the RSS-1 outfall during the 2012-2013 rainy season.  The following sentence shall be added after the first sentence of Paragraph 7 of the Agreement:

"In addition, RSI agrees to perform the monitoring described herein during the 2012-2013 rainy season only with respect to discharges at the RSS-1 outfall at the RSS facility."

Paragraph 7(a) of the Agreement is hereby amended to include the following sentence after the second sentence:

"If RSI has not sampled three (3) qualifying storm events by February 1 of the rainy season, then it shall sample up to three (3) storm events that results in a discharge at outfall RSS-1, regardless of whether they are qualifying storm events."

3.    <u>Meet and Confer Regarding Exceedance of Levels of Potential Concern</u>:  The Parties agree to include a meet and confer process to discuss exceedances and BMP enhancements at the RSS-1 outfall subsequent to the 2012-2013 rainy season.  The first sentence of Paragraph 10 of the Agreement is hereby amended and restated in its entirety:

"If analytical results of storm water samples taken by the during the 2009-2010, 2010-2011, 2011-2012, and 2012-2013 rainy season indicate that storm water discharges from the RSS and/or WCL facilities exceed the following levels of potential concern – Total Suspended Solids: 100 mg/L; Specific Conductance: 200 μmhos/cm; Oil & Grease: 15 mg/L or Total Organic Carbon: 120 mg/L; pH: 6.0-9.0 s.u.; Zinc: 0.117 mg/L; Nickel: 1.417 mg/L; Iron: 1.0 mg/L; Copper: 0.0636 mg/L; Lead: 0.0816 mg/L; and Chemical Oxygen Demand: 120 mg/L – RSI agrees to take responsive actions to improve its storm water management practices, including re-evaluating its structural and non-structural BMPs and considering  additional BMPs aimed at reducing levels observed in storm water samples."

The following sentence is hereby added to the end of Paragraph 10 of the Agreement:

"The Memorandum prepared subsequent to the 2012-2013 rainy season shall only consider exceedances and additional BMPs for the RSS-1 outfall."

4.    <u>Additional Oversight Costs</u>: RSI agrees to provide additional oversight costs for monitoring and meeting and conferring during the 2012-2013 wet season. The final three sentences of Paragraph 17 of the Agreement are hereby amended and restated in their entirety as follows:

"Up to four annual payments (one addressing monitoring associated with the 2009-2010 rainy season, one addressing monitoring associated with the 2010-2011 rainy season, one addressing monitoring associated with the 2011-2012 rainy season, and one addressing monitoring associated with the 2012-2013 rainy season) shall be made payable to "Lozeau-Drury Attorney-Client Trust Account" within thirty (30) days of receipt of an invoice from CSPA which contains a description of fees and costs incurred by CSPA to monitor implementation of the SETTLEMENT AGREEMENT during the previous twelve (12) months.  CSPA shall make a good faith effort to minimize its oversight costs.

The payment schedule shall be as follows:

2009-2010:    $9,000 maximum

|           |                   |
|-----------|-------------------|
| 2010-2011: | $7,000 maximum   |
| 2011-2012: | $6,000 maximum   |
| 2012-2013: | $4,000 maximum   |

5.    <u>Approval of this Amendment</u>: Within 5 (days) after this Amendment has been signed, CSPA shall send a copy of the Amendment to the United States Environmental Protection Agency and the U.S. Department of Justice for a 45-day review period pursuant to 40 C.F.R. § 135.5. In the event that the Agencies comment negatively on the provisions of this Amendment, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.

6.    <u>Counterparts</u>: This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

The PARTIES hereby approve this Amendment:

Date: December 10, 2012

REPUBLIC SERVICES, INC.

By: Tim M. Benter
Title: Vice President

Date: _____, 2012

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

**APPROVED AS TO FORM:**

Date: 12/10, 2012

For DEFENDANT

LAW OFFICES OF SCOTT W. GORDON

By: Scott W. Gordon, Esq.

|            |                  |
|------------|------------------|
| 2010-2011: | $7,000 maximum   |
| 2011-2012: | $6,000 maximum   |
| 2012-2013  | $4,000 maximum   |

5.     Approval of this Amendment: Within 5 (days) after this Amendment has been signed, CSPA shall send a copy of the Amendment to the United States Environmental Protection Agency and the U.S. Department of Justice for a 45-day review period pursuant to 40 C.F.R. § 135.5. In the event that the Agencies comment negatively on the provisions of this Amendment, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Agencies.

6.     Counterparts: This AGREEMENT may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this AGREEMENT.

The PARTIES hereby approve this Amendment:

Date:_____, 2012

REPUBLIC SERVICES, INC.

_____
By: Tim M. Benter
Title: Vice President

Date:_____, 2012

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

By: Bill Jennings
Title: Executive Director

**APPROVED AS TO FORM:**

For DEFENDANT

Date: _____, 2012

LAW OFFICES OF SCOTT W. GORDON

_____
By:  Scott W. Gordon, Esq.

Date: <u>Dec. 10</u>, 2012

For PLAINTIFFS

LOZEAU | DRURY LLP

By:     Douglas J. Chermak, Esq.